UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROBERT LOUIS PARKER JR., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-293 |
| | § | |
| J GAUNA, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**
**TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE**

Plaintiff Robert Louis Parker, Jr., a Texas inmate appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For purposes of screening, Plaintiff has stated: (1) deliberate indifference claims against **Sergeant Salinas** and **Officer Beerwood** in their individual capacities based on exposure to excessive heat; and (2) a deliberate indifference claim against Jane Doe Medical Provider or Assistant in her individual capacity based on inadequate treatment for his hand injury. Accordingly, it is respectfully recommended that these claims be **RETAINED.** The undersigned will order service on these defendants.

For the reasons set forth below, the undersigned further recommends that: (1) Plaintiff's claims for money damages against Warden Gauna in his official capacity be **DISMISSED** as barred by the Eleventh Amendment; (2) Plaintiff's claims for injunctive

relief be **DISMISSED with prejudice**; (3) Plaintiff's claims against Warden Gauna be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim; and (4) Plaintiff's remaining claims be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I.     JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.    PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently housed at the Willacy Unit in Raymondville, Texas.  Plaintiff's claims in this lawsuit arise in connection with Plaintiff's previous housing assignment at the Garza West Unit in Beeville, Texas.

In his original complaint, Plaintiff sues Garza West Unit Warden J. Gauna.  Plaintiff asserts that the conditions of his confinement at the Garza West Unit violated his constitutional rights in several respects.  He seeks monetary relief as well as injunctive relief in the form of placement on a medical unit and possible early release from prison.

A *Spears*[1] hearing was conducted on December 30, 2020. During the hearing, the undersigned directed Plaintiff to send the Court any documents or affidavits in support of his

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

claims.  (D.E. 12, pp. 34-35).  Plaintiff subsequently mailed his supplementary materials to the Court.  (D.E. 11).

The following representations were made either at the *Spears* hearing, in Plaintiff's original complaint (D.E. 1), or as part of Plaintiff's supplementary materials (D.E. 11). Plaintiff, who is fifty-five years old, arrived at the Garza West Unit on August 20, 2020, and was housed at that unit until October 22, 2020.  Plaintiff was subsequently transferred to the Willacy Unit, his current place of confinement.  Plaintiff has an enlarged prostate and suffers from hypertension, high cholesterol, and Hepatitis C.  (D.E. 12, pp. 6-7).  He further suffers from Post-Traumatic Stress Disorder (PTSD), manic depression, schizophrenia, and oppositional defiance disorder (ODD).

When Plaintiff arrived at the Garza West Unit, he was placed in quarantine for three weeks with fifty-four inmates who had pre-existing medical conditions.  They had limited movement and recreation while in quarantine and were placed close together with beds six inches apart.  Plaintiff had not been tested for COVID-19 but was exposed to other infected inmates.  (D.E. 12, p. 9).   However, to Plaintiff's knowledge, he did not catch COVID-19. (D.E. 12, p. 8).

After Plaintiff was moved from quarantine, he was placed in a housing area that had similar unsatisfactory conditions.  Plaintiff first complained about the heat due to no air-conditioning.  Plaintiff suffered a heat-related episode around the afternoon of September 6, 2020, where he started to feel ill.  (D.E. 12, p. 11).  An officer refused Plaintiff permission to go to the restroom.  Plaintiff asked another officer if he could speak to the sergeant about his heat exhaustion condition and whether he could take his medication.  Plaintiff was told to ask

his "wing officer."  (D.E. 12, p. 12).  Plaintiff was ultimately denied a chance to visit the restroom.

Plaintiff continued to feel ill later in the day.  After struggling to eat his meal, Plaintiff threw up in front of the chow hall and began to sweat heavily.  Plaintiff asked Sergeant Salinas if he could be taken to a respite location, which is a designated cool area such as the infirmary.  Sergeant Salinas informed Plaintiff that he would "check."  (D.E. 12, pp. 12-13).  However, no officer returned that night to check on Plaintiff.  At that time, the temperature was 94 degrees with a heat index of 106 degrees.  (D.E. 12, p. 14).

On or around September 11 and 12, 2020, Plaintiff complained of one or two related heat episodes where he felt nauseated and was sweating heavily.  Plaintiff, despite throwing up again in the presence of an officer identified as "Beerwood," was never taken to the medical department.  (D.E. 12, pp. 15-16).  Plaintiff has submitted the affidavit of inmate Ernest H. Dempsey, Jr.  (D.E. 11, p. 3).   Dempsey states that he witnessed Plaintiff in pain throwing up on September 11, 2020, that officers refused to assist Plaintiff, and that Dempsey and another inmate carried Plaintiff to his cell.  (D.E. 11, p. 3).  Plaintiff was denied respite on both occasions when he fell ill.  One of Plaintiff's sick call requests was screened by medical personnel and determined to be not urgent.

Related to his heat complaints, Plaintiff alleges that the Garza West Unit has inadequate ventilation in some of the buildings.  (D.E. 12, P. 22).  When Plaintiff complained about the heat due to inadequate ventilation, he was never given a respite shower despite his medical conditions.

On September 7, 2020, Plaintiff was involved in a separate incident around breakfast time involving an officer named Abbot.  Plaintiff explained to Abbot and another female officer that he was on a special medical diet.  Abbot allegedly cursed at Plaintiff while ordering him to take what was being offered or leave the line.  (D.E. 12, p. 15).  Plaintiff did not eat that day until 5:00 p.m. in the afternoon.  Plaintiff often did not receive his special medical diet.  (D.E. 12, p. 30).

Plaintiff next alleges that cats, birds, and rats were present on a daily basis in the dining area where the inmates dump their trays around the large trash cans.  (D.E. 12, p. 17).  No Garza West Unit officer took any action to correct this matter.  Plaintiff never saw any rats, cats, or birds in the area of the dining hall where the food was prepared.  (D.E. 12, p. 19).  While indicating that he had one bad case of diarrhea, Plaintiff stated that he did not suffer any food poisoning during his stay at the Garza West Unit.  (D.E. 12, pp. 19-20).

Plaintiff alleges that, during the quarantine, four toilets leaked fecal matter.  (D.E. 12, p. 20).  Plaintiff indicated that four toilets in general housing also leaked fecal matter.  According to Plaintiff, the broken toilets did not have a guard to prevent the water from splashing back on the inmate.

Plaintiff alleges that he was denied access to the courts when Law Librarian Rincon "stonewalled" Plaintiff and denied him access to certain supplies related to the filing of this case.  (D.E. 12, p. 23).  On September 29, 2020, Plaintiff filed a Step 1 grievance complaining that Rincon had repeatedly denied him writing and legal materials.  (D.E. 11, pp. 16-17).  Warden Gauna denied this grievance, finding that evidence was presented to show that

Plaintiff had been issued indigent supplies and that Plaintiff had informed Rincon he did not need legal supplies.  (D.E. 11, p. 17).

Next, Plaintiff alleges he was prevented from practicing his Christian faith.  (D.E. 12, pp. 26-27).  According to Plaintiff, he was told that the unit did not have any bibles or religious services available during most of his two months stay at the Garza West Unit.  Plaintiff wrote the unit's chaplain who provided no response.  Church service nevertheless was called a week before he was transferred.

Lastly, Plaintiff alleges that he was denied proper medical attention.  (D.E. 12, p. 31).  Plaintiff hurt his hand in a fight before his transfer to the Garza West Unit.  When Plaintiff arrived at the Garza West Unit, the wrap on his hand was taken away during intake.  He sought medical attention on or around September 20, 2020 to obtain a wrap for his hand and to renew his medications.  The medical provider or assistant on duty informed Plaintiff that she was too busy and that Plaintiff's request for medical attention was not urgent.  Plaintiff never received a wrap for his hand.  Plaintiff complains that his hand continues to hurt and is crooked.  (D.E. 12, pp. 33-34).

In a sick call request submitted on September 20, 2020, Plaintiff complained that he had been denied respite by medical staff on three occasions.  The response to Plaintiff's request noted that Plaintiff had been seen by the medical provider on September 18, 2020.  (D.E. 11-1, p. 9).  The response further reflected that his request had been deemed not to be emergent or urgent and that movement for non-emergent/non-urgent requests was limited due to COVID-19.  (D.E. 11-1, p. 9).

In another sick call request, Plaintiff sought various medications for pain in his wrist and back.  (D.E. 11-1, p. 12).  In a response dated September 28, 2020, some of Plaintiff's medication requests were granted while others were declined.  (D.E. 11-1, p. 12).

### III.   LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).  A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).  "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.  Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff

must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV.   DISCUSSION

### A.   Eleventh Amendment Immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state

itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues Warden Gauna in his official capacity for money damages, such claim is barred by the Eleventh Amendment. Thus, it is respectfully recommended that Plaintiff's claims for money damages against Warden Gauna in his official capacity be dismissed as barred by the Eleventh Amendment.

### B.    Claims Seeking Injunctive Relief

Plaintiff seeks injunctive relief in this action. Plaintiff, however, is no longer incarcerated at either the Garza West Unit. His transfer from the Garza West Unit to the Willacy Unit renders moot any request for injunctive relief against Warden Gauna or any other prison official from the West Garza Unit. *See Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000) (request for injunctive and declaratory relief becomes moot when inmate leaves the complained-of facility); *Souza v. FMC-Carswell*, 4:09-CV-469-Y, 2011 WL 611703, at *1 (N.D. Tex. Feb. 18, 2011) (dismissing plaintiff's claims for declaratory and injunctive relief under § 1915(e)(2)(B) because she was no longer incarcerated at the prison in which her condition-of-confinement claims arose). *See also Sias v. Jacobs*, No. 6:17cv413, 2017 WL 8229544, at *4 (E.D. Tex. Dec. 11, 2017) (explaining that a prisoner's transfer from a prison unit renders moot his claims of deliberate indifference when seeking injunctive relief

against the defendants at that unit).  Accordingly, it is respectfully respected that Plaintiff's claims for injunctive relief be dismissed with prejudice.

### C.    Supervisory Official

Plaintiff seeks to hold former Warden Gauna responsible for the various actions taken by his subordinate officials at the Garza West Unit.  "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303–04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). Thus, a supervisor who is not personally involved is liable only if he has implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304.). "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

Plaintiff alleges nothing to suggest that Warden Gauna had any personal involvement with regard to any of alleged acts taken by various subordinate officials to violate Plaintiff's constitutional rights.  Plaintiff further alleges nothing to indicate that Warden Gauna

implemented a policy that resulted in Plaintiff's injuries.  Plaintiff, therefore, has failed to allege a plausible claim against Warden Gauna in his role as a supervisory official.

Plaintiff has submitted a Step 1 grievance which was denied by Warden Gauna.  (D.E. 11, p. 17).  To the extent that Plaintiff challenges Warden Gauna's decision to reject his grievance, such allegations fail to state a cognizable constitutional claim. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) (applauding institution of grievance procedures by prisons but noting that such procedures are not constitutionally required); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (holding that the plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances).

Accordingly, it is respectfully recommended that Plaintiff's claims against Warden Gauna be dismissed with prejudice as frivolous and/or for failure to state a claim.

### D.    Denial of Access to the Courts

Plaintiff alleges that he was denied access to the courts when Law Librarian Rincon "stonewalled" Plaintiff and denied him access to certain supplies related to the filing of this case.  (D.E. 12, p. 23).

Prisoners have a constitutionally protected right of access to the courts.  *See Lewis v. Casey*, 518 U.S. 343, 360 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)).  The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of

confinement before the courts." *Lewis*, 518 U.S. at 356. *See also Jones*, 188 F.3d at 325 (the right provides a reasonable opportunity to file nonfrivolous legal claims challenging convictions or conditions of confinement).

Because the right of access is not a "freestanding right," to state a cognizable First Amendment claim, the plaintiff must demonstrate actual injury resulting from an alleged denial of access to the courts. *Lewis,* 518 U.S. at 351; *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999). Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts. *Lewis*, 518 U.S. at 349.

To meet the standing requirement, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Plaintiff "must establish that he has a personal stake in the alleged dispute and that the alleged injury suffered is particularized as to him." *Id.* at 819. In particular, to succeed on a claim of denial of access to courts, a plaintiff must show that he lost an actionable or nonfrivolous claim or was prevented from presenting such a claim because of the alleged denial. *See Lewis*, 518 U.S. at 356. He must show "that his position as a litigant was prejudiced" as a direct result of the denial of access. *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).

Plaintiff's allegations suggest that Law Librarian Rincon's actions in denying him writing and legal supplies interfered with Plaintiff's ability to file this § 1983 complaint. A review of Court records reflects, however, that Plaintiff successfully filed this complaint as well as supplemental materials in this action. Plaintiff provides no facts to suggest that he

missed any filing deadlines in this case or otherwise was prevented from raising a claim in this action.

Accepted as true, Plaintiff's allegations fail to state a plausible First Amendment claim for denial of access to the court based on Rincon's actions.  Accordingly, it is respectfully recommended that Plaintiff's First Amendment claim for denial of access to the courts be dismissed as frivolous and/or for failure to state a claim for relief.

### E.     RLUIPA and First Amendment

Plaintiff alleges that he was prevented from practicing his Christian faith in that he was told the unit did not have any Bibles or religious services available during most of his two months stay at the Garza West Unit.  (D.E. 12, pp. 26-27).  Liberally construed, Plaintiff has raised claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.*, and the First Amendment.

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof. U.S. Const., amend. I.  The United States Supreme Court has held that prisoners retain their First Amendment right, including the right to free exercise of religion.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

Nevertheless, an inmate retains only those First Amendment rights which "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Thus, a prisoner's right to practice his religion may be limited where the prison officials establish that there is a legitimate penological objective.  *Id.*; *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972) (per

curiam); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995).  "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *O'Lone*, 482 U.S. at 349 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

The RLUPIA "poses a far greater challenge than does *Turner* to prison regulations that impinge on inmates' free exercise of religion."  *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 858 n.1 (5th Cir. 2004).  Congress has also mandated that courts construe the RLUPIA "in favor of a broad protection of religious exercise," to the maximum extent permitted by law. 42 U.S.C. § 2000cc.

RLUIPA § 3 addresses restrictions on the religious exercise of institutionalized persons.  42 U.S.C. § 2000cc-1, § 3.   This section provides that "[n]o government shall impose a substantial burden on the religious exercise' of an institutionalized person unless the government demonstrates that the burden "is in furtherance of a compelling government interest" and "is the least restrictive means of furthering" that interest.  RLUPIA does not provide a cause of action for individual capacity claims.  *Jones v. Alfred*, 353 F. App'x 949, 951 (5th Cir. 2009).

Plaintiff's allegations, accepted as true, are vague and conclusory.  Plaintiff fails to present specific facts to identify his particular Christian faith and how prison officials burdened the practice of his faith.  The Supreme Court recently held that the State may temporarily limit civilian gatherings as a means to eliminate the legitimate risks of contagions spreading during pandemics. *See South Bay Pentecostal Church v. Newsome*, 140 S. Ct. 1613, 1613 (2020) (mem.).  Plaintiff's allegations indicate that: (1) prison officials had a legitimate

penological reason to impinge upon Plaintiff's First Amendment rights by restricting inmate gatherings to prevent COVID-19 from spreading; and (2) such restrictions were being eased toward the end of Plaintiff's time at the Garza West Unit.  Accordingly, the undersigned respectfully recommends that Plaintiff's RLUIPA and First Amendment claims be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### F.     Deliberate Indifference

Plaintiff claims that prison officials at the Garza West Unit acted with deliberate indifference to his health and safety in many respects.  A constitutional violation under the Eighth Amendment occurs when two requirements are met.  "First, there is an objective requirement that the condition must be so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (internal quotations and citation omitted). To prove a constitutional violation, an inmate need not show that a death or serious injury already has occurred, but rather that there is a "substantial risk of serious harm."  *Ball v. LeBlanc*, 792 F.3d 584, 593 (5th Cir. 2015) (citing *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004)).

"Second, under a subjective standard, [the court] must determine whether the prison official responsible was deliberately indifferent to inmate health and safety." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted).  Deliberate indifference is more than mere negligence.  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists and he must also draw the inference. *Id.* at 837.

Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). "Deliberate indifference is an "extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

### *(1) Heat*

An inmate's exposure to extreme temperatures can violate the Eighth Amendment. *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015); *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004). "To be tantamount to the infliction of cruel and unusual punishment, prison conditions must pose an unreasonable risk of serious damage to a prisoner's health—an objective test—and prison officials must have acted with deliberate indifference to the risk posed—a subjective test." *Ball*, 792 F.3d at 592 (internal quotation marks omitted) (affirming holding that Eighth Amendment was violated when prisoners who were being treated for hypertension and diabetes were held in very hot cells without sufficient access to heat-relief measures); *see Webb v. Livingston*, 618 F. App'x 201, 208-09 (5th Cir. 2015) (affirming holding that inmates with heat-sensitive medical conditions who were housed in cells where the temperature exceeded 100 degrees had asserted facts that, if proven, would overcome qualified immunity).

To prove a constitutional violation, an inmate need not show that a death or serious injury already has occurred, but rather that there is a "substantial risk of serious harm." *Ball*, 792 F.3d at 593 (citing *Gates*, 376 F.3d at 333). "Without the requisite proof of both subjective and objective components of an Eighth Amendment violation, however, merely 'uncomfortable' heat in a prisoner's cell does not reflect a 'basic human need that the prison has failed to meet' and is not constitutionally suspect." *Id.* 792 F.3d at 592 (citing *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995)).

Plaintiff's allegations reflect that: (1) on the afternoon of September 6, 2000, he started to feel ill from the heat; (2) officers denied Plaintiff permission to go to the restroom or take any medication to improve his condition; (3) later that day, Plaintiff continued to feel badly, threw up his meal, and began to sweat heavily; (4) Sergeant Salinas initially informed Plaintiff that he would check to see if Plaintiff could be taken to a respite location; (5) neither Sergeant Salinas nor any officer returned to check on Plaintiff despite the fact the temperature was 94 degrees with a heat index of 106 degrees; (6) on or around September 11 and 12, 2020, Plaintiff complained of one or two related heat episodes where he felt nauseated and was sweating heavily; (7) Plaintiff threw up in the presence of Officer Beerwood but was never taken to medical; and (8) an inmate witness named Dempsey observed witness in pain and throwing up on September 11, 2020, further indicating that officers refused to assist Plaintiff; and (9) Plaintiff was denied respite on both occasions where he fell ill.

Taken as true, the undersigned finds that Plaintiff's allegations are sufficient to state a deliberate indifference claim to his health. As recognized by the Fifth Circuit in *Ball*, Plaintiff need not show that he has suffered from a serious injury to state such a claim. *Ball*, 792 F.3d

at 593.  His allegations reflect that he suffered pain and nausea due to the extreme heat on a few occasions.  Furthermore, his allegations indicate that he had no access to any heat-mitigation measures, such as being moved to a respite area. Thus, Plaintiff satisfies the objective component of the deliberate indifference standard to the extent that he has alleged sufficient facts to state a substantial risk of serious harm.

The undersigned next considers whether Plaintiff can satisfy the subjective component of the deliberate indifference standard.  While indicating that several officers refused to help him when he fell ill from the heat, Plaintiff only identified Sergeant Salinas and Officer Beerwood who were present and provided no assistance to Plaintiff for his heat-related illnesses.  Plaintiff's allegations, taken as true, suggest that these officials were aware of the risk caused by the extreme heat conditions to Plaintiff and failed to take reasonable measures to abate that risk.

Accordingly, the undersigned respectfully recommends that Plaintiff's claims of deliberate indifference to his health based on exposure to excessive heat be retained against Sergeant Salinas and Officer Beerwood in their individual capacities.  These two officials will be added as defendants in this case.

### (2)  Plumbing

Plaintiff alleges that the Garza West Unit had several broken toilets which leaked fecal matter and splashed water back on him and other inmates while in use.  The conditions described by Plaintiff regarding the plumbing issues, while neither pleasant not comfortable, fail to the level of an Eighth Amendment violation.  Plaintiff's allegations, taken as true, fail

to show that he suffered any harm or was at risk of substantial harm. *See Ball*, 792 F.3d at 593; *Pomier v. Leonard*, No. G-10-121, 2012 WL 12877852, at \*2 (S.D. Tex. Oct. 31, 2012).

Moreover, to the extent that Plaintiff seeks only compensatory damages for his Eighth Amendment claim, such claim is barred by 42 U.S.C. § 1997e(e). This statute provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury ...." 42 U.S.C. § 1997e(e). Plaintiff does not allege that he suffered any physical injuries with regard to the plumbing issues and instead appears to seek compensatory monetary relief for emotional or mental anguish. Plaintiff's failure to allege any physical injury operates to bar any claim for compensatory monetary damages.

Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claim regarding plumbing issues at the Garza West Unit be dismissed as frivolous and/or for failure to state a claim for relief.

### *(3)  Birds, Cats, and Rats*

Plaintiff claims that prison officials acted with deliberate indifference to his health and safety by allowing cats, birds, and rats in the dining area where the inmates dump their trays around the large trash cans. Plaintiff, however, acknowledged that he did not see these animals in the area where food was prepared and that he did not suffer any food poisoning during his stay at the Garza West Unit.

While far from portraying an ideal eating environment, Plaintiff's allegations taken as true fail to show that he suffered any harm or that he was at risk of substantial harm. *See Ball*, 792 F.3d at 593. Furthermore, Plaintiff's failure to allege any physical injury operates to bar

any claim for compensatory monetary damages.  *See* 42 U.S.C. § 1997e(e). Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claims regarding the presence of birds, cats, and rats in the dining area be dismissed as frivolous and/or for failure to state a claim for relief.

### *(4)  Medical*

Plaintiff claims that prison officials acted with deliberate indifference to his serious medical needs in several respects.  In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). "[U]nsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012).

Plaintiff's first alleges that he was exposed to COVID-19 due to having been placed in a quarantine where there was no social distancing.  Plaintiff acknowledges, however, that he did not catch COVID-19.  Plaintiff's allegations, accepted as true, fail to indicate that the actions of prison officials resulted in him contracting COVID-19 or any other serious infection or that these officials acted with deliberate indifference to his serious medical needs on this matter.

Furthermore, Plaintiff's failure to allege any physical injury in the form of a COVID-19 infection operates to bar any claim for compensatory monetary damages.  *See* 42 U.S.C. §

1997e(e). Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claim regarding the lack of social distancing in quarantine be dismissed as frivolous and/or for failure to state a claim for relief.

Next, Plaintiff alleges that he was denied proper medical attention when he was denied or delayed certain medications. Plaintiff's allegation reflect that he suffered from numerous physical and mental conditions. He has submitted information showing that medical officials granted some of his medication requests while denying other requests. Plaintiff's allegations, taken as true, fail to suggest that he was at risk of substantial harm based on any delays or denials of certain medications or that any medical officials acted with deliberate indifference to such risk. Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claim based on inadequate responses to his medication requests be dismissed as frivolous and/or for failure to state a claim for relief.

Lastly, Plaintiff claims that he was denied proper medical attention for a serious hand injury. He alleges that: (1) he hurt his hand during a fight before arriving at the Garza West Unit; (2) when Plaintiff arrived at the Garza West Unit, the wrap on his hand was taken away during intake; (3) the medical provider or assistant on duty on or around September 20, 2020 denied Plaintiff any medical attention for his hand injury; (4) this individual informed Plaintiff that she was too busy and that Plaintiff's request for medical attention was not urgent; (5) Plaintiff never received a wrap for his hand; and (6) his hand continues to hurt and is now crooked.

Plaintiff's allegations, taken as true, suggest that at least one medical official was aware of facts suggesting that the Plaintiff's hand injury was serious and yet refused to provide

medical attention to Plaintiff.  Plaintiff's allegations further show that his hand condition has worsened based on the lack of medical attention provided to him at the Garza West Unit. Plaintiff, therefore, has alleged sufficient facts for purposes of stating a deliberate indifference claim based inadequate treatment for his hand injury.

Plaintiff has provided no specific facts to identify the medical official who denied him treatment for his hand injury.  The undersigned finds it appropriate to add Jane Doe Medical Provider or Assistant as a party defendant in this case.  Further factual development of this case will assist in determining the identity of this defendant who directly interacted with Plaintiff regarding his hand injury.  Accordingly, the undersigned recommends retaining Plaintiff's deliberate indifference claim against the Jane Doe Medical Provider or Assistant in her individual capacity.

### (5) Special Diet

Plaintiff claims that prison officials acted with deliberate indifference to his health by denying him a special diet on several occasions. On the issue of food, the prison system is not required to provide inmates with three meals a day.  *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986).  "The constitution requires only that inmates be provided with well-balanced meals, containing sufficient nutritional value to preserve health."  *Davis v. Stephens*, No. 2:15-CV-211, 2015 WL 4887577, at *8 (S.D. Tex. Aug. 17, 2015) (citing *Green*, 801 F.2d at 770-71).  Furthermore, "[w]ithout an allegation of resulting harm, complaints regarding food service practices simply are not of constitutional dimension."  *See Billizone v. Jefferson Parish Correctional Center*, No. 14-1263, 2015 WL 1897683, at *5 (E.D. La. Apr. 27, 2015) (internal quotations and citations omitted).

Plaintiff alleges that: (1) on September 7, 2020, Officer Abbot ignored Plaintiff's request to be provided his special diet at breakfast and directed Plaintiff to eat what eat offered; (2) Plaintiff did not eat that day until 5:00 p.m. in the afternoon; and (3) Plaintiff often did not receive his special medical diet. Plaintiff's allegations, accepted as true, fail to indicate that he suffered any harm or illness as a result of him not receiving his special diet on sporadic occasions. Indeed, Plaintiff's failure to allege any physical injury as a result of the meals served to him operates to bar any claim for compensatory monetary damages. *See* 42 U.S.C. § 1997e(e). Accordingly, the undersigned respectfully recommends that this deliberate indifference claim be dismissed as frivolous and/or for failure to state a claim for relief.

## V. RECOMMENDATION

For purposes of § 1915A, Plaintiff has stated sufficient facts that, if true, state (1) (1) deliberate indifference claims against **Sergeant Salinas** and **Officer Beerwood** in their individual capacities based on exposure to excessive heat; and (2) a deliberate indifference claim against Jane Doe Medical Provider or Assistant in her individual capacity based on inadequate treatment for his hand injury. Accordingly, it is respectfully recommended that these claims be **RETAINED**. The undersigned will order service as to these defendants by separate order.

The undersigned further recommends that: (1) Plaintiff's claims for money damages against Warden Gauna in his official capacity be **DISMISSED** as barred by the Eleventh Amendment; (2) Plaintiff's claims for injunctive relief be **DISMISSED with prejudice**; (3) Plaintiff's claims against Warden Gauna be **DISMISSED with prejudice** as frivolous and/or

for failure to state a claim; and (4) Plaintiff's remaining claims be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted this 12th day of February 2021.

Jason B. Libby
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).